UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TONGLU RISING SUN SHOES CO., LTD., | : : : | **Civil Action No. 14-1634 (SRC)(CLW)** |
| Plaintiff, | : : : | **OPINION** |
| v. | : |  |
| NATURAL NINE (USA) CO., LTD., YI XIAN JIANG a.k.a. JOHN, and ZHAO HUI HUANG, et al. | : |  |
| Defendants. |  |  |

**CHESLER**, District Judge

     This case arises out of a dispute between Plaintiff Tonglu Rising Sun Shoes Co., Ltd. ("Tonglu"), a company based in China, and Defendant Natural Nine (USA) Co., Ltd. ("Natural Nine"), a company based in Edison, New Jersey, owned by Defendant Yi Xian Jiang ("Mr. Jiang") and operated by his wife, Defendant Zhao Hui Huang ("Ms. Huang"). (Compl. ¶¶ 2; Def.s' Proposed Findings of Facts and Conclusions of Law ¶ 9). This Court decided cross-motions for summary judgment on December 20, 2016, and found that Defendants fraudulently induced Plaintiff into signing a contract to buy the Defendant business [Docket Entry 74 & 75]. This Court determined that Plaintiff was thus entitled to a rescission of the contract [Docket Entry 74]. This Court conducted a bench trial from April 24, 2017 through May 1, 2017 to determine what equitable relief was appropriate as a rescissionary remedy. Upon hearing the evidence presented at trial, this Court concludes that Plaintiff's rescissionary remedy should be a

total of $90,534, plus the return of shoe samples and personal items that Plaintiff provided to Defendants or the monetary value of those items.

I. **BACKGROUND**

In the spring of 2013, Tonglu, a shoe company based in China, decided to buy Natural Nine, a plush toy company based in Edison, New Jersey. (Compl. ¶¶ 2, 6, Final Pretrial Order at 2, Stipulated Facts [hereinafter "Stip. Facts"] ¶¶ 1, 2; Trial Tr. 36:15-23, 99:11-13, 228:23-229:24). Mr. Jiang was the owner of Natural Nine before sale, and his wife, Ms. Huang operated the business. (Compl. ¶ 2; Stip. Facts ¶ 3; Trial Tr. 152:8-154:25; Def.s' Proposed Findings of Facts and Conclusions of Law ¶¶ 8-9). The parties memorialized their agreement for Tonglu to purchase Natural Nine in a Sale and Purchase Agreement. (Compl. ¶ 6). In that agreement, Natural Nine stated that the company that Tonglu was purchasing "is free of debt, both internally and externally." (Compl. ¶ 7, Ex. A, art II ¶ 1).

In June 2013, Tonglu sent a representative, Jason Tong ("Mr. Tong"), to the United States to take over ownership and operation of Natural Nine. (Def.s' Proposed Findings of Facts and Conclusions of Law ¶ 23; Trial Tr. 211:4-214:18). Ms. Huang continued to work at Natural Nine as an employee of the newly owned company. (Def.s' Proposed Findings of Facts and Conclusions of Law ¶ 25-26; Trial Tr. 220:13-223:21). After three months, Mr. Tong abandoned the company, thinking the business arrangement was a "scam". (Def.s' Proposed Findings of Facts and Conclusions of Law ¶ 52; Trial Tr. 297:9-24). Ms. Huang continued to operate the company after Mr. Tong left. (Trial Tr. 160:25-164:1)

On March 13, 2014, Plaintiff sued Defendants, claiming, among other things, that it relied on Defendants' false statement that Natural Nine was free of debt when it agreed to

purchase the company, but that it later found out that Natural Nine had a significant amount of debt. (Compl. ¶¶ 8, 10; PTX-12). Plaintiff claimed it was fraudulently induced into entering the Sale and Purchase Agreement. Defendants Natural Nine, Mr. Jiang, and Ms. Huang counterclaimed against Tonglu and brought a Third-Party Complaint against officers of Tonglu. In August 2016, Plaintiff moved for summary judgment on all claims and counterclaims [Docket Entry 60]. Defendants cross-moved on the same [Docket Entry 68].

On December 20, 2016, this Court entered an Opinion and an Order, resolving all counts in the Complaint, Third-Party Complaint, and all counterclaims [Docket Entries 74 & 74]. This Court held that the only surviving claim was Count Two of the Complaint, for fraud in the inducement, and that Plaintiff showed at the summary judgment stage that Natural Nine induced Tonglu to purchase the business based on Natural Nine's clear but fraudulent statement in the Sale and Purchase Agreement that it was free of debt [Docket Entry 74]. Plaintiff chose to rescind the contract and seek a rescissionary remedy [Docket Entry 74]. Thus, the only remaining issue for trial was what equitable relief was appropriate. The Court conducted a bench trial from April 24, 2017 through May 1, 2017 to determine what Plaintiff's rescissionary remedy should be.

## II.  THE EVIDENCE AT TRIAL[1]

### a.  DEPOSITION TESTIMONY OF GRACE T. FAN

Selected testimony from the June 7, 2016 deposition of Grace T. Fan was read into the

---

[1] The witnesses called at trial testified to a multitude of payments, checks, deposits, tax returns, and bank statements. The Court focuses only on the evidence that Plaintiff and Defendants discuss in their Proposed Findings of Facts and Conclusions of Law and the evidence that the Court finds relevant in calculating the rescissionary remedy.

trial record. (Trial Tr. 25:12-22, 34:16-18). Ms. Fan was an accountant at ATA Group of Edison, New Jersey, which performed the accounting and tax preparation for Natural Nine from 2011 through 2015. (Stip. Facts ¶¶ 7, 8, 11; Trial Tr. 37:12-20). Ms. Fan testified that the paperwork submitted by Natural Nine was "not at par", that it was "pretty much a messy account", and that she was "not very proud about this account because it is a lot of adjustment that we need to reach this financial [sic]." (Trial Tr. 39:12-40:2).

From what Ms. Fan could make out in the paperwork, Ms. Fan testified that there were funds contributed by Natural Nine's buyer into Natural Nine's bank account. (Trial Tr. 59:05-61:04, 84:11-84:17). These funds were made up of $29,114.74, representing "inventory received . . . in the form of capital injection", as well as entry of $93,000, $7,000, and $5,000. (Trial Tr. 59:05-61:04, 84:11-84:17).

b. **TESTIMONY OF PAUL LANDY**

Next, Paul Lundy, an employee from Santander Bank, testified. Mr. Lundy explained that Santander Bank acquired Sovereign Bank sometime in 2012 or 2013 and thus he testified regarding both Sovereign Bank and Santander Bank documents that Santander Bank produced in response to a subpoena. (Trial Tr. 119:3-120:8).

Mr. Lundy testified that Natural Nine had a Sovereign Bank checking account, number 2241157864. (PTX-57; Trial Tr. 130:2-133:15, 154:10-25). Ms. Huang was the sole signatory of the account and therefore the only person who could sign checks, make withdrawals, and make deposits in the name of the Natural Nine through this Sovereign checking account. (Trial Tr. 130:2-133:15, 152:18-25, 154:10-25; PTX-57; PTX-58). Throughout trial, this account was referred to as the "Old Natural Nine account" because it was the bank account that Ms. Huang

4

used to operate Natural Nine before the purchase. (Trial Tr. 258:7-25).

       c. **TESTIMONY OF GUOLEI TONG**

Mr. Tong, the corporate representative of Tonglu, testified next. Mr. Tong spoke about three bank accounts that are relevant in this case. First, he testified about his PNC "personal account", checking number 8051245872. (Trial Tr. 260:3-261:20-25). Ms. Huang helped Mr. Tong set up his personal account when he first arrived in the United States. (Trial Tr. 212:18-213:24, 261:20-25). Although Mr. Tong's personal account had both Ms. Huang's and Mr. Tong's names on it, Ms. Huang assured Mr. Tong that she would not use the account or write checks from the account. (Trial Tr. 212:18-213:2, 261:20-25). Mr. Tong testified that Tonglu representatives in China wired money into his personal account and Mr. Tong used this money to make payments for the new business. (Trial Tr. 259:9-261:16).

Mr. Tong testified that he made several payments from his personal account into the "New Natural Nine account," a bank account with the checking number 8059660827. (PTX-1; Trial Tr. 214:5-216:4, 258:7-25). On June 14, 2013, Mr. Tong deposited $97,606. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶¶ 8-9; PTX-106; Trial Tr. 215:8-216:8, 259:9-261:25). He also deposited $7,000 on July 12, 2013 and $5,000 on August 13, 2013 from his personal account to the New Natural Nine account. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶¶ 10-11; Trial Tr. 216:06-217:18, 259:9-263:8, PTX-2). Mr. Tong testified that he put the $5,000 into the corporate account because it did not have "a lot of money left, so, I need to put more investment into that account." (Trial. Tr. 217:8-18). Mr. Tong also stated that Tonglu wired $16,300 directly into the New Natural Nine account on August 29, 2013. (Trial Tr. 481:20-488:14; PTX-5 at 3). Importantly, only Mr. Tong had signatory authority and

could withdraw money from the New Natural Nine account. (PTX-1; Trial Tr. 214:3-216:4). Neither Ms. Huang nor Mr. Jiang could access funds in the New Natural Nine account.

Aside from payments into the New Natural Nine account, Mr. Tong testified to several payments he made into the Old Natural Nine account. First, he testified that he paid $10,000 by check on June 7, 2013 as payment for the business. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶¶ 1-2; PTX-79; Trial Tr. 257:14-259:8). Mr. Tong wrote the check from his personal account and the money was deposited into the Old Natural Nine account. (PTX-79). Second, Mr. Tong testified that he wrote a check from the New Natural Nine account to the Old Natural Nine account in the amount of $53,750 as payment to acquire the company. (PTX-7 at 1; Trial Tr. 231:17-232:22; Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 71).

Finally, Mr. Tong testified as to why Tonglu purchased Natural Nine and why Mr. Tong abandoned the company after three months. He explained that Tonglu bought the company in order to purchase the name of the business, to get a list of Natural Nine's 2,000 customers, and to sell both plush toys and shoes to those customers. (Trial Tr. 222:1-10-223:18, 228:21-25). In the beginning of September, however, Ms. Huang had not provided the list of 2,000 customers that were in the toy business and she also had failed to provide Natural Nine's registered trademark. (Trial Tr. 223:22-226:11, 297:9-24). Thus, Mr. Tong began to think that the business arrangement was a scam. (Trial Tr. 223:22-226:11, 297:9-24). Mr. Tong called his attorney and found out that Natural Nine had a lot of debt, and thus he decided to abandon the business. (Trial Tr. 297:9-24). On September 13, 2013, he withdrew money from the New Natural Nine account. (Trial Tr. 299:15-301:16). Mr. Tong left the United States on or about September 16, 2013. (Trial Tr. 299:18-300:1). Mr. Tong left behind sample shoes and other

6

items that remain with the Defendants today. (Trial Tr. 229:21-231:4). Mr. Tong testified that the value of those items is about $12,000. (Trial Tr. 231:05-231:08).

### d. TESTIMONY OF ZHAO HUI HUANG

Next, Ms. Huang, one of the Defendants, testified at trial. Ms. Huang testified that she worked at Natural Nine since it opened in June 1993. (Trial Tr. 96:8-17).

Ms. Huang testified to alternative explanations for the payments that Mr. Tong discussed. First, she claimed that the $10,000 check that Mr. Tong wrote out, dated June 7, 2013, was reimbursement because five Tonglu representatives visited and stayed in her home for ten days, and she took them to visit customers in Washington, D.C. (Trial Tr. 169:3-22, 172:1-15, 449:6-450:9; Def.s' Proposed Findings of Facts and Conclusions of Law ¶¶ 74-76). She also testified that the $53,750 check from the New Natural Nine account that was deposited into Old Natural Nine account was part of "monthly expenses" for June 2013 operations. (Trial Tr. 413:2-414:13). At trial, she explained how these monthly expenses came to $53,750. (Def.s' Proposed Findings of Facts and Conclusions of Law ¶¶ 107, 109; Trial Tr. 413:2-414:13). Ms. Huang stated:

> It includes the rent for June which was supposed to be something around 12,000 - $1200, $12,000, and $3000. Also it includes the Las Vegas show, the expenses for Las Vegas show, which was around 6,200, and also the expenses for the New Jersey show, which was around $1,055. There are, of course, other expenses included, for example, like office supplies and etc., etc. . . .
> [Mr. Tong] asked me what is the roundabout figure I need for my monthly expenses. So I told him at the time that the month of June, July, and August for our – for toy industry is a – they are slow months, and I told him that my expenses would be around 53,000 to 54,000. So, this money that he gave me at the time was for covering the expenses which I have events to them and also, it was sort of a deposit for and then for my monthly expenses.

(Trial Tr. 413:2-414:13).

Additionally, Ms. Huang testified that a $20,000 check from Xiaoyang Gong ("Mr. Gong") was not for the purchase of the business. (Trial Tr. 350:19-352:9, 450:14-22). Although her testimony in some ways seemed to show that Mr. Gong was affiliated with Tonglu, Ms. Huang also testified that Mr. Gong was her relative. (Trial Tr. 344:2-3, 346:1-347:4, 350:19-352:9, 450:14-22). Ms. Huang testified that Mr. Gong gave her the $20,000 as a personal favor to pay off her company's loans. (Trial Tr. 350:19-352:9, 450:14-22).

Ms. Huang also discussed her experience when she continued to work at Natural Nine once Tonglu took control. (Trial Tr. 391:17-24; Def.s' Proposed Findings of Facts and Conclusions of Law ¶ 25-26). She testified that during those three months, although a formal transfer had not taken place, she believed Tonglu had taken over control of the business because Tonglu was paying the routine business expenses and salaries through the New Natural Nine account. (Trial Tr. 367:13-368:3; Pl.'s Proposed Findings of Facts and Conclusions of Law ¶¶ 96-106; PTX-43). She testified that the new Natural Nine company, run by Tonglu, paid for toys, specifically $26,784 worth of toys, but not all of them were sold during the time that Tonglu was running the business; she eventually sold those toys on her own. (Trial Tr. 157:21-160:24, 163:09-164:03, 323:19-324:5). She stated at one point that the new Natural Nine saw some proceeds from the sale of these toys, but at another point in her testimony she stated that the new Natural Nine gained no profits during its three months in operation. (Trial Tr. 323:19-324:5, 368:1-11).

Finally, Ms. Huang testified that she was in possession of sample shoes that Tonglu provided to her along with personal items belonging to Tonglu representatives. (Trial Tr. 341:16-342:11). She testified that she was willing to return these items, but that she deserved

rent for storing them. (Trial Tr. 341:16-342:11). The shoe samples took up two to three boxes and the personal belongings took up two piles in Natural Nine's warehouse. (Trial Tr. 342:21-25). Ms. Huang testified that she did not need to purchase additional space for the items. (Trial Tr. 343:9-18).

e. **DEPOSITION TESTIMONY OF YI XIAN JIANG**

Selected testimony from the October 28, 2014 deposition of Yi Xian Jiang, another Defendant, was read into the trial record. Mr. Jiang testified that he was the owner of Natural Nine and that his wife, Ms. Huang, did not have an ownership interest. (Trial Tr. 471:15-472:20). But, when asked to expand on Ms. Huang's ownership interest, he clarified that he and his wife "never actually divided [Natural Nine] in that way. I mean, it's in the family. She's in the company. She's in it." (Trial Tr. 472:7-11).

### III. DISCUSSION

After finding that Defendants engaged in equitable fraud in the inducement on summary judgment, this Court conducted a bench trial to calculate Plaintiff's rescissionary remedy. The aim of rescission is to return the parties to the *status quo ante* and to stop the party who made the misrepresentation from benefitting. *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 612 (1989). "[T]he measure of damages is the consideration paid and the moneys naturally expended on account of the purchase before the fraud was discovered." *Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 130-31 (1962); *Kvedar v. Shapiro*, 98 N.J.L. 225, 228 (1922). Plaintiff concedes that it had the burden of proof at trial to show its entitlement to recovery of specific payments by

9

a preponderance of the evidence.[2] (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 132).

Throughout trial, the Court was presented with numerous checks, cash disbursement journals, and bank statements. But, these items were presented in a haphazard and disorganized fashion. As Natural Nine's accountant, Ms. Fan, testified, Natural Nine's books and records were a mess. (Stip. Facts ¶¶ 7, 8, 11; Trial Tr. 37:12-20, 39:12-40:2). This is an absolute understatement. Here, there was no effort to document transactions or to clearly indicate purposes of various expenditures. The Court, therefore, carefully calculates the rescissionary remedy by adding up only the payments that Plaintiff proved by a preponderance of the evidence were payments that went into the Old Natural Nine account, over which Ms. Huang had sole signatory authority. (Trial Tr. 152:18-25; PTX-57). The Court also includes in its calculation the amount the new Natural Nine spent to purchase toys that Ms. Huang later sold. It also includes the items that Plaintiff gave to Defendants. The Court does not include many of the expenditures discussed throughout trial because Plaintiff failed to prove by a preponderance of the evidence that these were purchase payments that went to Defendants.

### a. THE CALCULATION OF PLAINTIFF'S RESCISSIONARY REMEDY

Plaintiff proved by a preponderance of the evidence that it is entitled to the return of several payments as part of its rescissionary remedy. First, Plaintiff is entitled to reimbursement for the $10,000 check, dated June 7, 2013. (Pl.'s Proposed Findings of Facts and Conclusions of

---

[2] Defendants argue that Plaintiff's burden of proof is not a preponderance of evidence standard, but a clear and convincing evidence standard because a fraud claim is at issue. However, the fraud issue was resolved on summary judgment; this trial was about how much Plaintiff was entitled as a rescissionary remedy. Therefore, Plaintiff's burden at trial was to prove the amount it deserved as rescission by a preponderance of the evidence.

Law ¶¶ 1-2; PTX-79; Trial Tr. 257:14-259:8). This check was deposited into the Old Natural Nine account. (PTX-79). Plaintiff provided the check itself, which showed that Mr. Tong wrote the check from his personal account and that the money was deposited into the Old Natural Nine account. (PTX-79). The Court accepts Mr. Tong's explanation that this $10,000 was payment from Tonglu for purchase of the company. Ms. Huang's explanation, on the other hand, was not credible. Ms. Huang testified that the $10,000 was reimbursement because five Tonglu representatives visited and stayed in her home for ten days, and she took them to Washington, D.C. to visit customers. (Trial Tr. 169:3-22, 172: 1-15, 449:6-450:9; Def.s' Proposed Findings of Facts and Conclusions of Law ¶¶ 74-76). It is not credible that Tonglu would pay Ms. Huang $10,000 for this visit because Ms. Huang was voluntarily hosting the individuals from Tonglu in order to incentivize Tonglu to purchase her company.

Additionally, Plaintiff showed by a preponderance of the evidence that the check of $53,750 from the New Natural Nine account, which was deposited into the Old Natural Nine account, was part of the purchase price for the company. (PTX-7 at 1; Trial Tr. 231:17-232:22; Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 71). Ms. Huang's testimony that this was part of "monthly expenses" for June 2013 operations was not credible. (Def.s' Proposed Findings of Facts and Conclusions of Law ¶¶ 107, 109; Trial Tr. 413:2-414:13). Although she attempted to list out these expenses and how they added to $53,750, her list fell far short of adding to $53,750. (Def.s' Proposed Findings of Facts and Conclusions of Law ¶¶ 107, 109; Trial Tr. 413:2-414:13). The Court is satisfied based on Mr. Tong's testimony that this was a payment for the business.

Next, the Court is satisfied that Tonglu is entitled to reimbursement for the $26,784 wire

11

payment from the New Natural Nine account to Shanghai Tanyuan Toys to purchase plush toys. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 108; Trial Tr. 157:21-164:6). This is reimbursable because Ms. Huang admitted that even though Tonglu paid for the toys, she sold the toys and gained the profits. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 108; Trial Tr. 157:21-160:24, 163:09-164:03, 323:19-324:5). Although at one point during her testimony she said that the new Natural Nine saw proceeds from the sale of some of these toys, at another point she stated that the new Natural Nine gained no profits at all. (Trial Tr. 323:19-324:5, 368:1-11). This Court finds that there was no evidence that the new Natural Nine ever saw proceeds from the sale of these toys. The $26,784 must, therefore, be returned to Plaintiff in order to stop Defendants from unfairly benefitting.

Finally, as part of Plaintiff's rescissionary remedy, Defendants must return the sample shoes and other items belonging to Tonglu that Defendants have retained. (Trial Tr. 341:16-342:25). Mr. Tong testified that the value of these items is about $12,000. (Trial Tr. 231:05-231:08). Ms. Huang admitted that she retained possession of these items, but claimed she deserved rent for storing the items. (Trial Tr. 341:16-342:11). Nevertheless, the evidence showed that any storage costs for the items were de minimus; the items took up two to three boxes and two piles within Natural Nine's warehouse and Ms. Huang never needed to purchase additional space because of the items. (Trial Tr. 341:16-343-18). Any claim by Defendants that they are entitled to rent is, therefore, unconvincing. Defendants must return the shoe samples or their monetary value of $12,000.

In sum, Plaintiff proved by a preponderance of the evidence that its rescissionary remedy should consist of the return of the $10,000 and $53,750 payments to the Old Natural Nine

12

account, as well as the $26,784 wire payment to purchase toys eventually sold by Defendants and the items that Defendants possess that belong to Plaintiff (or their monetary value). These were the only payments that Plaintiff proved were related to the purchase of the company and that went into Defendants' control. Thus, Plaintiff is entitled to a total of $90,534, plus the shoe samples or their monetary equivalent of $12,000.

### b. ITEMS NOT INCLUDED IN THE RESCISSIONARY REMEDY

Plaintiff failed to meet its burden in showing that the rest of the payments were purchase payments for the company. First, Plaintiff failed to show by a preponderance of the evidence that the $20,000 check from Mr. Gong was to purchase the company. Ms. Huang testified that Mr. Gong was her relative, and that he sent her the $20,000 check as a personal favor to help her pay off a loan. (Trial Tr. 344:2-3, 350:19-352:9, 450:14-22). Even if Mr. Gong was involved with Tonglu, this does not mean that the check was part of the purchase payment for Natural Nine. The Court concludes that Plaintiff failed to prove that the $20,000 payment by Mr. Gong was a payment for the business, and thus it is not included in the rescissionary remedy.

Plaintiff also failed to present evidence showing that it is entitled to the $125,506 it seeks for money it paid into the New Natural Nine account.[3] Plaintiff is not entitled to this money because Plaintiff never proved that this money went to the Defendants; instead, the money went into the New Natural Nine account, for which only Mr. Tong had signatory and check-writing authority. (Trial Tr. 103:23-107:1, 214:5-216:4; PTX-1). Because Plaintiff failed to prove that any of the payments made into the New Natural Nine account ever went to the old owner and

---

[3] Ms. Fan's testimony as to the amount the buyer paid to purchase Natural Nine is of little probative value because Ms. Fan was sorting out books and records that by her own testimony were a mess.

13

operator of Natural Nine, this money is not reimbursable.

Additionally, Plaintiff cannot be reimbursed for the funds paid into the New Natural Nine account because the evidence at trial showed that Mr. Tong used the money in the New Natural Nine account to run the business. From the time he arrived in the U.S., Mr. Tong was making decisions over what money was coming in and out of the New Natural Nine account. (Trial Tr. 220:10-12, 367:13-368:3, 416:4-7). Thus, while the formal transfer of ownership never occurred, Tonglu was exercising control over the new Natural Nine and was the de facto owner of the company. Mr. Tong acted as the owner and treated Ms. Huang as if she was the Chief Operating Officer. (Trial Tr. 220:13-223:21). As the de facto owner of Natural Nine, Tonglu was equitably responsible for the operating expenses, just as it was entitled to profits and responsible for losses. Tonglu cannot now claim that it is entitled to reimbursement for the money paid into the New Natural Nine account, because it failed to show that the money was not used to operate the business during the time period that Tonglu assumed control until its abandonment of the business.

In sum, Plaintiff failed to prove that Mr. Gong's payment or Mr. Tong's payments into the New Natural Nine account were purchase payments for the business.

### c. LIABILITY FOR THE RESCISSIONARY REMEDY

Defendants argue that Ms. Huang has no liability here because Mr. Jiang alone was the owner of Natural Nine. Nevertheless, throughout trial, there was overwhelming evidence that although Mr. Jiang was the de jure owner of stock in Natural Nine, Ms. Huang was the person who ran Natural Nine and she functioned as a de facto owner of the company. (Trial Tr. 152:8-154:25; Def's Proposed Findings of Facts and Conclusions of Law ¶¶ 8-9). She was responsible

for taking money and disbursing funds. (Trial Tr. 152:8-154:25; Def's Proposed Findings of Facts and Conclusions of Law ¶¶ 8-9). Defendants even present her as the "operator of the business" in their Proposed Findings of Facts. (Def's Proposed Findings of Facts and Conclusions of Law ¶ 9). Ms. Huang was deeply involved in the operation of the company and integrated in the ownership structure of the company. The couple ran the company as if it was a partnership, and not a corporation. (*See* Trial Tr. 472:7-11) ("Well, we never actually divided in that way. I mean, it's in the family. She's in the company. She's in it."). Thus, this Court finds that she, in addition to Mr. Jiang, is personally responsible for liabilities in this case.

## IV. FINDINGS OF FACT

Based on the evidence at trial, this Court makes the following Findings of Fact:

1. There are two relevant bank accounts belonging to Natural Nine here. The first, a Sovereign Bank checking account, number 2241157864, was the bank account that Ms. Huang used to operate Natural Nine before the purchase. (PTX-57; Trial Tr. 130:2-133:15, 154:10-25). Ms. Huang was the sole signatory of the account and therefore the only person who could sign checks, make withdrawals, and make deposits in the name of the Natural Nine through this Sovereign checking account. (Trial Tr. 113:21-114:4, 130:2-133:15, 152:18-25, 154:10-25; PTX-57; PTX-58). This account was referred to throughout trial as the "Old Natural Nine account". (Trial Tr. 258:7-25).

2. The second Natural Nine bank account, checking number 8059660827, was a PNC account opened on June 14, 2013. (PTX-1; Trial Tr. 214:5-216:4). Only Mr. Tong had signatory authority for that account and only he could withdraw money from the account. (Trial Tr. 103:23-107:1, 214:5-216:4; PTX-1). Neither Ms. Huang nor Mr. Jiang could access funds in this account. This account became known as the "New Natural Nine account". (Trial Tr. 258:7-25).

3. A third relevant bank account here was Mr. Tong's personal PNC account, account number 8051245872. (Trial Tr. 260:3-8). Although the account had both Ms. Huang's and Mr. Tong's names on it, Ms. Huang's name was only on it because she helped Mr. Tong set up the account. (Trial Tr. 261:20-25). Ms. Huang assured Mr. Tong that she would not use the account or write checks from the account. (Trial Tr. 261:20-25). This account became known throughout trial as Mr. Tong's personal account. Tonglu

15

representatives in China wired money into Mr. Tong's personal account and Mr. Tong then used this money to make payments for the new business. (Trial Tr. 259:9-261:16).

4. A $10,000 check was deposited on June 7, 2013 into the Old Natural Nine account. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶¶ 1-2; PTX-79; Trial Tr. 257:14-259:8). The money was taken out of Mr. Tong's personal account. (PTX-79; Trial Tr. 260:3-8).

5. A check of $53,750 was written from the New Natural Nine account and deposited into the Old Natural Nine account. (PTX-7 at 1; Trial Tr. 231:17-232:22; Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 71).

6. A $26,784 wire payment was made from the New Natural Nine account to Shanghai Tanyuan Toys to purchase plush toys. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 108; Trial Tr. 157:21-164:6). Ms. Huang eventually sold the toys and received the proceeds of these sales. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶ 108; Trial Tr. 157:21-160:24, 163:09-164:03).

7. Defendants have retained possession of sample shoes and other items belonging to Tonglu, which can be valued at $12,000. (Trial Tr. 231:05-231:08, 341:16-342:25).

8. Mr. Tong paid $97,606 on June 14, 2013, $7,000 on July 12, 2013, $5,000 on August 13, 2013, and $16,300 on August 29, 2013 into the New Natural Nine account. (Pl.'s Proposed Findings of Facts and Conclusions of Law ¶¶ 8-12; PTX-106; PTX-2; PTX-5 at 3; Trial Tr. 93:12-93:17, 108:9-108:17, 216:06-217:18, 481:20-488:14). On September 13, 2013, when he abandoned the business, Mr. Tong withdrew money from the New Natural Nine account. (Trial Tr. 299:15-301:16).

9. Mr. Jiang was the de jure owner of stock in Natural Nine. (Stip. Facts ¶ 3; Trial Tr. 471:15- 472:20).

10. Ms. Huang was the person who ran Natural Nine. She was responsible for taking money, disbursing funds, and she functioned as a de facto owner of the company. (Trial Tr. 472:7-11).

### V. CONCLUSIONS OF LAW

This Court makes the following Conclusions of Law:

1. Plaintiff had the burden of proof to show entitlement to recovery by a preponderance of the evidence.

2. Plaintiff proved by a preponderance of the evidence that Tonglu paid $10,000 by check on June 7, 2013 to the Old Natural Nine account as payment for the business. Therefore, Plaintiff is entitled to $10,000 as part of its rescissionary remedy.

3. Plaintiff proved by a preponderance of the evidence that a check of $53,750, written from the New Natural Nine account and deposited into the Old Natural Nine account, was payment for the business. Therefore, Plaintiff is entitled to $53,750 as part of its rescissionary remedy.

4. Plaintiff proved by a preponderance of the evidence that Tonglu is entitled to reimbursement for the $26,784 wire payment from the New Natural Nine account to Shanghai Tanyuan Toys for plush toys because Ms. Huang eventually sold the toys and she received the proceeds from those sales. Thus, the $26,784 is included in Plaintiff's rescissionary remedy.

5. Plaintiff proved by a preponderance of the evidence that it is entitled to either the return of the actual shoe samples and possessions that it gave to Defendants or the $12,000 monetary equivalent for those items. The storage costs for these items were de minimus and Defendants do not deserve rent for storing these items.

6. Plaintiff failed to show by a preponderance of the evidence that Plaintiff is owed $125,506 for money it paid into the New Natural Nine account. Plaintiff has failed to show that this money ever went to the old owner or operator of Natural Nine. Therefore, this amount is not included in the rescissionary remedy.

7. Plaintiff will not be reimbursed for the operating expenses it paid for the new Natural Nine from the time it took over as the de facto owner until it abandoned the business.

8. Plaintiff failed to show by a preponderance of the evidence that the $20,000 check from Mr. Gong was a check on behalf of Tonglu to purchase the company. Thus, this amount is not included in the rescissionary remedy.

9. Mr. Jiang and Ms. Huang are both personally responsible for liabilities in this case as the de jure and de facto owners of Natural Nine.

10. This Court will not make a finding as to bad faith or unclean hands.

An appropriate Order will be filed herewith.

    s/ Stanley R. Chesler

STANLEY R. CHESLER

United States District Judge

Dated: July 13, 2017